IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH MABRY, on behalf of herself and a putative class of similarly situated individuals, | ) ) ) ) |
| *Plaintiff*, | ) ) No. 20 C 376 |
| v. | ) ) Judge Virginia M. Kendall ) |
| STANDARD INDUSTRIES, INC., d/b/a GAF MATERIALS CORP., | ) ) ) |
| *Defendant*. | ) ) |

## MEMORANDUM ORDER AND OPINION

Sarah Mabry hired Warner Roofing to fix the roof on her Rockford, Illinois home after it had been damaged in a hail storm. She hired Warner in part because it had received a "Master Elite" certification from GAF Materials Corporation ("GAF"). Dissatisfied with Warner's professionalism and quality of work, Mabry, on behalf of a putative class, sued GAF in the Circuit Court of Cook County for unjust enrichment, negligent misrepresentation, and unfair or deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). GAF removed the action to this Court under this Court's diversity jurisdiction and now moves to dismiss the Complaint on the grounds that it fails to state claims upon which relief can be granted. For the reasons set forth below, the Motion to Dismiss (Dkt. 11) is granted in part and denied in part.

## BACKGROUND

For purposes of the instant Motion, the Court assumes the accuracy of the following factual allegations taken from Mabry's Complaint. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

1

Following a hailstorm that swept through Rockford in 2017, a representative from Warner Roofing solicited Sarah Mabry at her home. (Complaint ¶¶ 56, 69.) During the representative's meeting with Mabry, he informed her that Warner was certified by GAF as Master Elite, which meant that she could rest assured that Warner was a professional and dependable company. (*Id.* ¶ 69.) The Warner representative also informed Mabry that because Warner was Master Elite-certified, Mabry would receive the "strongest warranty protection" that GAF offered. (*Id.* ¶ 76.) Believing that the Master Elite certification meant that Warner was professional and dependable, she signed a contract with Warner and paid a deposit. (*Id.* ¶ 71.) But for Warner's Master Elite designation, Mabry would not have hired Warner for the job. (*Id.* ¶ 72.) Ultimately, Warner did substandard work, which it completed months after the agreed-upon completion date, and violated multiple Illinois statutes in the process, including statutes related to permitting and insurance coverage. (*Id.* ¶ 73.) Although Mabry's roof is now failing, Warner claims that it did not register her for a warranty that covers the damage to her roof and has refused to honor any warranty. (*Id.* ¶ 77–78.)

GAF manufactures roofing products, including residential roofing systems and shingles. (*Id.* ¶¶ 18–19.) Although GAF does not install roofing products itself, GAF has devised a "Master Elite" program under which GAF permits designated contractors to sell certain GAF warranties. (*Id.* ¶¶ 19, 22.) In exchange, the "Master Elite" contractors must use primarily GAF products in their roofing projects. (*Id.* ¶ 22.) GAF markets its "Master Elite" program by suggesting to homeowners that GAF, as an expert in roofing, has independently assessed contractors and determined that they are professional and dependable and perform quality roofing work. (*Id.* ¶ 23.) GAF's website describes the "Master Elite" program like this:

> Master Elite® Certification is GAF's factory certification program that provides ongoing training to roofing contractors and assurance to you that the roof will be completed well and professionally. Only 2% of all roofing contractors have qualified as Master Elite®. Choosing a GAF Master Elite® contractor is your assurance that you'11 be dealing with a quality, and dependable professional contractor.

(*Id.* ¶ 24.) The website also indicates that so few contractors receive the Master Elite designation because GAF has "stringent standards." (*Id.* ¶ 25–26.) At GAF's direction and encouragement, Master Elite contractors make materially identical representations about the Master Elite program to prospective roofing customers. (*Id.* ¶ 27.) In fact, GAF provides Master Elite contractors with brochures entitled "Take the Worry Out," which are intended for distribution to clients. These brochures indicate that GAF has "stringent standards" for the Master Elite program, that only 2% of roofing contractors have Master Elite status, and that by selecting a Master Elite contractor, clients can be assured that are working with a "quality, reputable, and dependable contractor—not some 'fly-by-nighter.'" (*Id.* ¶ 28.) Mabry, like all customers who ultimately hire Master Elite contractors, was exposed to representations that GAF employed stringent standards for its Master Elite program, that Master Elite contractors are professional and dependable, and that only 2–3% of roofing contractors are certified as Master Elite. (*Id.* ¶ 29.)

All contractors applying for Master Elite status must agree to the Master Elite Contract, which is a standard form contract. (*Id.* ¶ 32.) The Master Elite Contract requires contractors to agree that 75% of their annual expenditures on roofing products will go toward GAF roofing products. (*Id.* ¶ 33.) The Contract also requires Master Elite contractors not to promote any non-GAF roofing products. (*Id.* ¶ 34.) Finally, the Contract provides contractors with financial incentives known as "GAF Bucks" for selling certain quantities of GAF warranties. (*Id.* ¶ 35.) GAF does not disclose the terms of its relationships with Master Elite contractors, and the Contract

specifically forbids contractors from disclosing the terms of the Master Elite program to customers. (*Id.* ¶ 39–40.)

In order to maintain one's status as a Master Elite contractor, at least three of the contractor's employees must pass an annual "Pro Field Guide" certification exam. (*Id.* ¶ 51.) If an employee scores below the 80% passing threshold, GAF will send the employee a letter indicating which questions the employee answered incorrectly. (*Id.* ¶ 52.) The employee may then re-try those questions, submitting answers as many times as needed in order to pass. (*Id.*)

An additional requirement for becoming a Master Elite contractor is that the contractor must have been in business for seven years, but GAF does not take adequate precautions to ensure that each contractor satisfies this requirement. (*Id.* ¶ 54–55.) Warner, for example, the roofer that Mabry used, stated in its Master Elite application that it had been in business for seven years, but it had only received a business license eighteen months before being certified as Master Elite. (*Id.*)

## LEGAL STANDARD

To overcome a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the complaint's factual allegations as true and draws all permissible inferences in the plaintiff's favor. *W. Bend Mut. Ins. Co.*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a

motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation' of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### I.  ICFA Claim

To prevail on an ICFA claim, a plaintiff must demonstrate that the defendant "committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pret Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). An unfair or deceptive act can include "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, or suppression or omission of any material fact." 815 ILCS 505/2. A claim premised on deceptive, rather than unfair, conduct is essentially a fraud claim, so Federal Rule of Civil Procedure 9(b) applies, which requires the plaintiff to plead with particularity the circumstances constituting fraud—*i.e.* the "who, what, when, where, and how" of the alleged fraud. *Vanzant*, 934 F.3d at 738. Here, Mabry pleads that GAF's actions were both deceptive and unfair (Dkt. 1-1 at ¶¶ 92–93), so the Court considers both possibilities. A practice is deceptive if it creates a likelihood that a "reasonable consumer" would be deceived by it. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). A practice is unfair under the ICFA if it "offends public policy," if it is "immoral, unethical, oppressive, or unscrupulous," and if it "causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002).

Courts must construe the ICFA liberally to effectuate its purpose—namely, "protecting consumers and others against fraud, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any form of trade or commerce." *Price v. Phillip Morris, Inc.*, 848 N.E.2d 1, 32 (Ill. 2005). FTC regulations promulgated under Section 5(a) of the Fair Trade Commission Act are one of the tools available to courts construing the statute. *See* 815 ILCS 505/2 (directing courts to consider regulations promulgated by the FTC when considering whether a particular act or omission qualifies as an unfair or deceptive act within the meaning of the statute). Relevant to the instant case, the FTC has published regulations called the "Guides Concerning Use of Endorsements and Testimonials in Advertising" ("Guides"). 16 C.F.R. § 255.0, *et seq*. The Guides apply to "any advertising message . . . that consumers are likely to believe reflects the opinions, beliefs, finding, or experiences of a party of other than the sponsoring advertiser." 16 C.F.R. § 255.0. The Guides require disclosure of any "connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (*i.e.*, the connection is not reasonably expected by the audience)." 16 C.F.R. § 255.5.

Mabry contends that it is unfair and deceptive for GAF not to disclose that in order for a contractor to become Master Elite-certified, the contractor must agree to purchase most of their roofing products from GAF. (Dkt. 1-1 ¶ 91.) In other words, Mabry contends that under the ICFA, as construed by reference to the Guides, GAF's failure to disclose the nature of its financial arrangement with roofers that it certifies as Master Elite is an unfair or deceptive act. Mabry also contends that it was unfair and deceptive for GAF to encourage, direct, or require Master Elite contractors to not explain the nature of the financial relationship between the contractors and GAF to prospective customers.

Considering Mabry's contentions as a whole, the Court finds that Mabry has adequately alleged that GAF engaged in an unfair or deceptive trade practice within the meaning of the ICFA. That is, GAF allegedly endorsed the services of Warner Roofing by certifying Warner as Master Elite, but did not disclose the financial relationship between GAF and Warner. The terms of that financial relationship—namely, that Warner was required to purchase the majority of its roofing products from GAF, promote GAF warranties, and refrain from promoting roofing products made by any other manufacturer—materially affect the weight and credibility of that endorsement. A typical homeowner in the market for roofing work likely would not be aware that GAF is a manufacturer of roofing products, so the nature of the financial arrangement between Warner and GAF might not be "reasonably expected by the audience" of roofing customers. *See* 16 C.F.R. § 255.5. This is especially so given the manner in which GAF requires contractors to describe the Master Elite certification to customers. That is, roofers like Warner describe the process of becoming Master Elite-certified as a competitive, merit-based process. (Complaint ¶¶ 23–24.) This suggests that GAF is an independent, financially indifferent entity, when in reality it has a substantial financial stake in the success of every roofer that it certifies as Master Elite. GAF's endorsement falls squarely within the category of endorsements for which the Guide requires disclosure of the nature of the financial relationship at play. Because GAF made no such disclosure to Mabry, and indeed specifically forbade Warner from making such a disclosure to her, the Court finds that Mabry has adequately pleaded that GAF committed an unfair or deceptive act in the course of trade or commerce, within the meaning of the ICFA. Mabry has also adequately pleaded that GAF committed this act with the intent to deceive; indeed, the Court can conceive of no logical reason to withhold from customers material information about the nature of the relationship between GAF and Warner other than to encourage customers to purchase a service that they might

7

not otherwise purchase had they possessed complete information. Finally, Mabry has pleaded that because Warner had received the deceptive Master Elite certification from GAF, she was induced to pay a premium for Warner's services. In other words, had Warner not been designated as Master Elite, Warner's services would have cost less. That Mabry had to pay Warner more because of Warner's Master Elite designation is the damage Mabry alleges that she incurred. Whether a price differential between Master Elite contractors and other contractors actually exists is beyond the scope of the Court's inquiry for purposes of this Motion. That she alleges that the price differential exists and that the deceptive certification enables Warner to command a higher price for its services is sufficient for her to state a claim under the ICFA.

Mabry has only stated a valid ICFA claim on the grounds that GAF did not disclose to roofing customers (and required Master Elite contractors not to disclose) the nature of the financial relationship between GAF and the Master Elite contractors. That GAF described its Master Elite contractors as "professional" and "dependable" or that it describes the standards for becoming Master Elite-certified as "stringent" cannot be bases for an ICFA claim because those are statements of mere puffery. Statements that constitute "mere puffery" are not actionable because no reasonable consumer would rely on such statements as the sole basis for making a purchase. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). Illinois courts define statements of puffery as "exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005); *see also Speakers of Sport, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (explaining that puffing is not actionable because it constitutes "meaningless superlatives that no reasonable person would take seriously"). The

statement that Master Elite contractors are professional and dependable cannot be proven false, so it is a statement of mere puffery that is not actionable under the ICFA.

The Motion to Dismiss is denied as to the ICFA claim, but Mabry is only is permitted to proceed with this claim on the theory that the omission of information regarding the financial relationship between GAF and Master Elite contractors is the relevant deceptive or unfair act.

## II. Negligent Misrepresentation Claim

In order to make out an negligent misrepresentation claim, a plaintiff must allege: (1) that the defendant had a duty to the plaintiff to communicate accurate information, (2) that the defendant made a false statement of material fact to the plaintiff, (3) that the defendant negligently failed to ascertain the truth of that statement, (4) that the defendant made the statement with the intent to induce the plaintiff to act, (5) that the plaintiff acted in reliance on the truth of that statement, and (6) that the plaintiff suffered damage due to that reliance. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006).

Mabry alleges that GAF made two misrepresentations for which it is liable to Mabry. Mabry first points to GAF's "assurance" that Master Elite contractors are "professional" and "dependable" and that GAF applies "stringent" standards in designating Master Elite contractors. As explained above, however, these are statements of mere puffery, the truth or falsity of which cannot be proven. As such, these statements cannot form the basis of a negligent misrepresentation claim.

The second alleged misrepresentation is GAF's statement that just 2–3% of roofing contractors are Master Elite-certified. Unlike statements of mere puffery, whether 2–3% of roofing contractors are Master Elite-certified can be proven, so the Court must address whether Mabry has alleged each of the elements of a negligent misrepresentation as to this statement. Mabry alleges

that GAF had a duty to communicate accurate information to Mabry because GAF is, in part, in the business of supplying information to guide consumers in making informed decisions about the roofing contractors they hire. Illinois law imposes a duty on those "in the business of supplying information for the guidance of others in their business transactions" to avoid negligently conveying false information. *Id.* at 335. GAF's role vis-à-vis Mabry was to provide her with information to guide her in entering into a potential business transaction with Warner. As such, GAF did have a duty to Mabry to convey accurate information to her. Mabry further alleges that GAF's statement is false because substantially more than 2–3% of roofing contractors are Master Elite-certified, regardless of the applicable denominator, and GAF made this false statement to induce customers like Mabry to hire a Master Elite contractor. (Complaint ¶ 29.) But Mabry fails to allege any reliance on GAF's allegedly false statement regarding the percentage of roofing contractors that are Master Elite or that she suffered any damage. Indeed, it is difficult to imagine what Mabry's damages could be. Suppose the actual percentage of roofers that are Master Elite is 6%; that would make Mabry's choice of roofer less "elite," but that she hired a roofer that shares a certification with a larger group of colleagues than she was made to believe does not appear to have caused her any injury. Mabry does not allege that had she known that 6%, not 2–3%, of roofers are Master Elite that she would not have hired Warner, which is dispositive in this analysis. She has alleged no reliance on that specific figure or any injury stemming from GAF's alleged misrepresentation of the actual figure. Accordingly, the Motion to Dismiss is granted without prejudice as to the negligent misrepresentation claim.[1]

---

[1] To the extent that Mabry also attempts to make out an ICFA claim on the grounds that the 2–3% figure is a misrepresentation, this same analysis applies. Even assuming the falsity of that statistic, there is no basis for damages, so Mabry will not be permitted to proceed on that theory.

### III. Unjust Enrichment Claim

In order to make out an unjust enrichment claim under Illinois law, Mabry must allege that GAF has unjustly retained a benefit to Mabry's detriment and that retention of that benefit violates fundamental principles of justice, equity, and good conscience. *See Cleary v. Phillip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Illinois "recognizes unjust enrichment as an independent cause of action." *Id.* However, the improper conduct underlying an unjust enrichment claim is typically the basis of another claim, and in those cases, the "unjust enrichment claim will stand or fall with the related claim." *Id.* at 517.

Mabry's theory of liability here is that the misrepresentations and omissions described with respect to the other counts enabled GAF to sell more products and increase its profits, to the detriment of Mabry, who had to pay more for her roof repair than she would have absent those misrepresentations and omissions. (Complaint ¶¶ 98–102.) Because these allegations are identical to the allegations in the other two counts, the unjust enrichment count will stand or fall on the same basis as those counts. Thus, to the extent that the unjust enrichment count is premised on the omission of information related to the financial relationship between Master Elite contractors and GAF, and the financial benefit accruing to GAF as a result of that omission, Mabry has adequately pleaded an unjust enrichment claim. But Mabry will not be permitted to proceed on an unjust enrichment claim that is based on statements that the Court has found to constitute mere puffery or on the claim that 2–3% of contractors are Master Elite.

### CONCLUSION

For the reasons set forth above, the Motion to Dismiss [11] is granted in part and denied in part. The Motion is denied as to the ICFA claim, but Mabry will not be permitted to proceed with that claim under certain theories as outlined above. The Motion is granted as to the negligent

misrepresentation claim. Finally, the Motion is denied as to the unjust enrichment claim, but with the same caveat that applies to the ICFA claim.

_____
Virginia M. Kendall
United States District Judge

Date: May 4, 2020